PRELIPP and husband, Appellants, v. WAUSAU MEMORIAL HOSPITAL, Respondent.

*No. 70. Argued January 6, 1971.—Decided February 2, 1971.*
(Also reported in 183 N. W. 2d 24.)

---

For the appellants there was a brief by *Graunke &
Boone* of Wausau, and oral argument by *Walter A.
Graunke.*

For the respondent there was a brief by *Tinkham, Smith, Bliss & Patterson* of Wausau, and oral argument by *John E. Bliss*.

ROBERT W. HANSEN, J. This is a "step and fall" case. There was a step and a fall, and that is all.

The step was at the entry or doorway to the employees' lavatory in the hospital. There is no allegation that there was any violation of the state building code in the construction of the step. All witnesses agreed that the step was uniform and without defect. There was no evidence of inadequate lighting at the time and place of fall.

The fall was caused by the plaintiff failing to step down when she left the lavatory. Plaintiff told her husband that, as she was leaving the lavatory, she simply walked out into space. At the trial she testified that she forgot the step and stepped out into space. She further testified that there was nothing on the floor that caused her to slip or stumble. Her husband testified that she said nothing to him about slipping or that there was any defect in the step. No claim is made that the plaintiff was distracted by any object or any person as she stepped out of the lavatory.

In finding no negligence on the part of the hospital in this particular combination of a step and a fall, the trial court relied entirely upon one Wisconsin case, *Bradstrom v. Lasker Jewelers* (1951), 259 Wis. 366, 48 N. W. 2d 490. In that case the plaintiff was injured while returning to the sidewalk from a raised or one-step terrazzo entryway which she had stepped up on to view a display of jewelry in the vestibule window of defendant's store.

In *Bradstrom*, this court held that the combination of a step and a fall, that and nothing more, does not create a cause of action under the safe-place statute. The court

refused to find the use of a step, instead of a ramp or incline, to be an unsafe or unreasonable accommodation to a difference in floor levels, saying:

"When there is a difference in levels between two parts of premises owned or controlled by one person he is confronted by a dilemma if he wishes to maintain communication between them. He may have a step which permits each of the adjacent areas to be level but which produces an abrupt difference of elevation, conducive to tripping or stumbling; or he may have a ramp which dispenses with so abrupt a change but results in an inclined floor with its own disadvantages tending to promote slipping and sliding. We take judicial notice that a step is a usual and reasonable device employed to facilitate foot passage from one level to another. In itself it does not violate the requirement of reasonable safety.

". . . we cannot hold that the safety of this place containing a step is a jury question under the safe-place statute unless we are ready to hold that by itself the presence of a step or steps in any public place is a potential breach of the duty owed by the custodian or owner of the premises to an employee, frequenter, or member of the public. We have not gone to that length in the past and are not ready to do so now." (*Bradstrom v. Lasker Jewelers, supra,* at pages 368, 369.)

Are there any facts in this record that take this case out from under the *Bradstrom* ruling that the existence of a step and the fact of a fall are not enough to allege or establish a cause of action under the safe-place statute?

To create such exception to such general rule, plaintiff relies most heavily upon its claim that there were no signs near the entry calling attention to the step with the words "Step Up" and "Step Down." There is a dispute in the testimony as to whether or not there were such warning signs. Four witnesses for plaintiff testified that they observed no such signs. Hospital officials and employees testified that there were such signs at

the time of the fall. One witness testified to observing a "Step Down" sign attached to the inside of the lavatory door, but that a person leaving the lavatory would not be able to see it if the door was left open, as it was here. On this issue, in its opinion, the trial court stated, ". . . the court would be reluctant to permit this verdict to stand if it depended upon a jury finding that such signs were not in fact placed where all of the hospital officials and attendants stated they were at the time in question." However, assuming there were no such signs, that fact alone would not create a special hazard or exception to the *Bradstrom* rule. Where, by reason of location or concealment, a special risk or danger exists, displayed warning signs may remove or warn of the existing hazard, but the absence of a sign does not create a liability that would not otherwise exist. As this court stated in *Bradstrom:*

". . . If lack of a warning sign or device breaches the duty owed to frequenters of premises as they are described in these complaints, such warnings must be required for all steps in public places. We cannot reach such a conclusion. . . ." (*Bradstrom v. Lasker Jewelers, supra,* at page 369.)

Plaintiff's brief argues that the fact that this step was at the entry or in the doorway of the lavatory takes it out from under the *Bradstrom* ruling. We are asked to find that ". . . the step is in an unusual place and cannot or would not be reasonably anticipated by a normal user of the entryway." But, whether they lead to a lavatory or another room, upstairs or downstairs, steps and stairways are more likely to occur at a doorway than in the middle of a room or corridor. In fact, closeness to a turn in a corridor has been held to create a jury question as to structural safety although termed a "close question." (*Heiden v. Milwaukee* (1937), 226 Wis. 92, 275 N. W. 922.) It is true that in *Bradstrom* (page 368)

it is recognized that ". . . It has been held to be such a violation [of the requirement of reasonable safety] where there were present factors which prevented the frequenter of the place from noticing the step, as where a door was interposed within a few inches of the step, [citing *Helms v. Fox Badger Theatres Corp.* (1948), 253 Wis. 113, 33 N. W. (2d) 210] . . ." In the case before us, there is and could be no claim of relatedness of the presence of a door to the fall for the reason that the door was open when the plaintiff entered the lavatory and still open when she left. We deal here with a doorway, not a door. Nor do we find anything either unusual or distinguishingly hazardous in the juxtaposition of step and doorway. Just the reverse is true. The light brown tile covered the hallway; the dark, speckled concrete of the lavatory floor provided a contrast and break in color continuity of the floor surfaces.

As noted in *Bradstrom* (at pages 368, 369), an exception to the general rule can derive from a situation ". . . where the purpose of the place was such that proprietors should expect frequenters to be inattentive to difference of levels in the absence of special warning." [citing *Bunce v. Grand & Sixth Building, Inc.* (1931), 206 Wis. 100, 238 N. W. 867]. In the *Bunce Case* (page 102), a toilet facility for theater patrons was involved, and the court noted that a person entering such facilities "is quite likely to be so engrossed in the object of his entry as not to be anticipating or looking for impediments that may cause him to stumble, . . ." Presumably, also, the sense of urgency underlying such preoccupation would be less on leaving than entering. Additionally, one who has had to step up to enter certainly has been adequately informed of the need to step down when leaving.

There is here no claim of any defect in the step, any inadequacy as to lighting, nor any diverting of atten-

tion by any object or person. In fact, the case for liability here is weaker than in *Bradstrom* where the plaintiff who forgot to step down had stepped up to examine merchandise displayed in a store window. Where a customer's attention at least inside a store is ". . . primarily focused on seeking and examining merchandise and considering the purchase thereof," this court has held the predictability of diverted attention becomes a factor to be considered in determining reasonableness as to construction or lack of warning. (*See Zehren v. F. W. Woolworth Co.* (1960), 11 Wis. 2d 539, 543, 105 N. W. 2d 563. *See also: Steinhorst v. H. C. Prange Co.* (1970), 48 Wis. 2d 679, 686, 180 N. W. 2d 525.) In the case before us, there is no claim that plaintiff's attention was diverted or distracted by anything or anybody, much less any claim of the predictability of such diverted attention. All that is here is a step, in the doorway of a lavatory in a hospital, and a fall by a person leaving the lavatory who forgot that the step was there and stepped out, instead of down.

Of the record here, as this court said of the pleadings in *Bradstrom* (page 369), we find ". . . no particular in which this step, because of its construction or situation, is more hazardous than the safest of steps. If the present allegations [here, record] raise a jury question, it is raised by the bare combination of a step and a fall. . . ." In its opinion, the trial court stated that it was ". . . of the opinion that the case of *Bradstrom vs. Lasker Jewelers . . .* was controlling in this situation," adding, "As a matter of fact, it is seldom that the trial court has an expression from the Supreme Court as much in point as the *Bradstrom* case is with the case now under consideration." The comment is appropriate. The reference is accurate. The reliance is proper.

*By the Court.*—Judgment affirmed.